UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EDILBERTO CACERES** | **CASE NO. 2:21-CV-03834** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PRELOAD LLC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court are two motions, Plaintiff Edilberto Caceres's Motion for Partial Summary Judgment with Request for Oral Argument (Doc. 22) and Defendant Preload, LLC's ("Preload") Cross-Motion for Summary Judgment (Doc. 24), wherein they ask the Court to rule on the issue of whether the Plaintiff's exclusive remedy is in workers' compensation under Louisiana Revised Statutes section 23:1032. Each party opposes the other's motion. Docs. 26, 28. Each party has replied. Docs. 27, 29.

### I.  BACKGROUND

This diversity action arises from an October 5, 2020 scaffold accident that occurred at a Water Treatment Plant at 4300 Alma Lane, Lake Charles, Louisiana ("Plant"), where it is alleged that Isaid Figueroa ("Figueroa"), an employee of Preload working on a project at the Plant, fell from a scaffold affixed with red tape, and suffered fatal injuries as a result of the fall. Doc. 1-4, p. 1, 3; doc. 14, pp. 1–2, doc. 28-1, p. 6.

Preload is in the business of constructing concrete water storage tanks and contracted with the city of Lake Charles to construct a water tank at the Plant. Doc. 28-1, p. 6.  On October 5, 2020, Preload employees, including Figueroa, were instructed to paint

the interior walls of a water tank, roughly 34 feet high. Doc. 26-1, p.1. To complete the job, Preload constructed an approximately 34-foot-high rolling scaffold. *Id.* Preload knew a fall from that height would certainly cause an injury and possibly death. *Id.* The scaffold did not have locking wheels, as required by OSHA. *Id.* Preload knew that workers should not ride when the scaffold is being moved without the backup base installed. *Id.* This rolling scaffold had a height to width ratio of 6.8 to 1, more than three times the OSHA limit. *Id.* OSHA regulations prohibit riding a rolling scaffold in some situations where the floor slope exceeds 3 degrees, and, at the Plant where the scaffold straddled, the slope of the tank floor was 12 degrees. *Id.* at 2. Preload knew that OSHA requires the use of backup-support scaffolding to stabilize the scaffold and prevent falls once the shoring is removed from the tank. *Id.* The backup components were available, and Preload's manager, David Jeter, knew the backup base needed to be installed. *Id.* Mr. Jeter knew that the scaffold was "red-tagged" because it lacked the backup components on the day of the incident. *Id.*

There was a designed hole, approximately 24-inches in diameter, in the tank floor that was in the scaffold's path. *Id.* at 2, 3. Preload knew that the scaffold would pass near the hole and had to straddle a dangerous slope with a small margin of error for the scaffold to move and avoid hazards. *Id.* at 2. The tank had a 10-inch ledge along the outer wall. *Id.* The floor sloped down from this ledge to the lower, center floor which was level. *Id.* The scaffold was designed for the two outer wheels to ride the ledge around the tank while the inner wheels were on the center floor. *Id.* Due to the design of the tank, the outer wheels of the scaffold could not move more than approximately 10 inches from the outer wall of the tank. *Id.* This resulted in a predetermined and fixed path of the scaffold as it moved

around the tank. *Id.* Considering that the width of the scaffold wheel is roughly four (4) inches, the scaffold had only about six (6) inches, at most, where the scaffold could be moved inwards or outwards to avoid hazards on the tank floor. *Id.* Preload knew that filling the designed hole with dunnage was an option to mitigate the hazard; however, a loose piece of ¾ inch plywood that could not support the weight of the scaffold was used to partially cover the hole. *Id.* at 3.

Mr. Jeter knew the scaffold was defective prior to the accident and knew work was being performed from the scaffold the day of the accident. *Id.* at 4. Mr. Jeter was required to inspect the scaffold before work started on the day of the incident, conduct a pre-work safety meeting to discuss safe use of the scaffold and potential hazards, and then supervise the work to ensure the safety of Preload's employees. *Id.* Mr. Jeter did not discuss the condition of the scaffold at the safety meeting when he instructed the crew to waterproof wall panel seams inside the tank. *Id.*; Doc. 28-1, p. 6. Figueroa and other workers mounted a rolling scaffold and began painting wall panel joint seams inside the tank. Doc. 28-1, p. 6. Once the first section was painted, one of the crewmembers on the scaffold called down for the other workers to roll the scaffold to the next seam. *Id.* at 7. During the move, one of the scaffold base's wheels fell into the hole. *Id.* The scaffold toppled backward to the floor and Figueroa was fatally injured. *Id.* Figueroa was working in the course and scope of his employment with Preload when he was killed as a result of the incident. *Id.* at 5. Doc. 26-1, p. 4; doc. 28-1, p. 6.

Preload employee, and Lead-Man, Jose Alvarez knew the scaffold was being rolled with workers on every level and assisted with rolling the scaffold at the time of the fall.

Doc. 26-1, p. 4. Preload's Director of Health and Safety, Wilson Frazier, emailed OSHA a copy of PowerPoint Slides and mobile scaffold training materials, which he admits were not used to train employees and which demonstrated the need for backup components installed on rolling scaffolds. *Id.* The only known time a scaffold was rolled with people onboard, in a tank with sloped floor, without the backup stabilization, and in close proximity of unsecured floor holes was on October 5, 2020. *Id.* All three of the Preload supervisors onsite, Mr. Jeter, Mr. Alvarez, and Mr. Neblett, were demoted by Preload as a result of the incident. *Id.* No other crew members were demoted or otherwise disciplined whatsoever. *Id.* The fact that the scaffold had been "red-tagged" and deemed unfit was not brought to the attention of laborers on October 5, 2020, the day of the incident, before they were instructed to mount and work on or near the scaffold. *Id.*

On September 17, 2021, Plaintiff filed wrongful death and survival actions against Preload in the 14th Judicial District Court, Parish of Calcasieu, Louisiana, seeking damages resulting from an intentional act. Doc. 1-4, pp. 1–3. Plaintiff asserts that he is the biological father of Figueroa. Doc. 1-4, p. 1. On November 1, 2021, Preload removed the case to this Court. Doc. 1. On December 16, 2021, the Court denied Preload's Rule 12(b)(6) Motion (Doc. 8), finding that Plaintiff had sufficiently alleged conditions and violations of safety standards concerning the subject scaffold, in addition to Preload's concern or motivation, for completing the particular job to support Plaintiff's contention that there was a virtual certainty that the "accident" would occur. Doc. 12. Jury trial is set for July 17, 2023, at 9:00. Doc. 21.

## II. LEGAL STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III. LAW & ANALYSIS

Here, like the previous Rule 12(b)(6) Motion (Doc. 8), the issue is whether Figueroa's injury resulted from an intentional act by Preload. Louisiana Revised Statutes section 23:1032 states:

> §1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
>
> A.(1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

"Intentional act" under Section 23:1032 requires that "the person who acts either (1) consciously desires the physical result of this act whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley v. Tortorich,* 397 So.2d 475, 481 (La. 1981). This "intentional act" exception, however, is narrowly construed by the Louisiana Supreme Court. *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 211 (La. 1999). Therefore, "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work

condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Id.*

Here, Plaintiff argues that Preload knew that Figueroa's injury was substantially certain to follow from the overall unreasonable risk that Preload created. Doc. 22-1, pp. 22–23. Plaintiff asserts that, like "successively removing Jenga pieces incrementally," *id.* at 19, piling multiple instances of fault of Preload reaches the level of "substantial certainty," sufficient to be considered an "intentional act" under Louisiana Revised Statute section 23:1023, *id.* at 19-20, 23. Specifically, Plaintiff claims the following facts warrant the "intentional act" exception: a Preload manager, Mr. Alvarez, steered the scaffold into a hole knowing the scaffold was substantially certain to collapse and substantially certain to cause injury; Preload has a practice of rolling scaffolds in violation of OSHA without backup scaffold; and Preload supervisors failed to alert Preload employees of the unfit scaffolding and unsafe working conditions. *Id.* at 23–25. By contrast, it is Preload's position in its cross-motion for summary judgment is that Figueroa and other employees knowingly mounted the red-tagged scaffold, knew they were not permitted to do so, and did not mention the red-tag or the absence of the back base to the site project manager. Doc. 24-1, p. 3. Moreover, Preload asserts that no one claims that workers intentionally pushed the scaffold wheel into a hole. *Id.* In all, Preload maintains that it was simply an accident. *Id.* And due to it being an accident, the Workers Compensation provision in Louisiana Revised Statutes section 23:1032 applies. *Id.* at 4.

First, Plaintiff's conclusion that Mr. Alvarez intentionally pushed the scaffold into the hole is controverted by Mr. Alvarez's deposition testimony. Doc. 22-11, pp. 14–15, doc. 24-10, p. 69. Specifically, Mr. Alvarez testified that he did not see the hole, he did not intentionally steer/push the scaffold into the hole, and believed it was an accident. *Id.* The next incremental negligent act Plaintiff claims creates a "substantial certainty" of the accident is that no red tag existed on the scaffold on the day of the accident and is supported by testimony of Mr. Figueroa's co-workers, Raymond Harvey, Jaime Pena, and Jamal that they did not see or recall a red tag on the scaffold on the day of the incident.[1] Doc. 22-1, p. 13. On the other hand, Preload has presented evidence that the scaffold was red-tagged on the day of the accident; therefore, Figueroa and other employees should have known to avoid the scaffold until the red-tag was removed after being made ready for work. Doc. 24-4, pp. 118–19, 140, 152–53, 233, 247, 277–78; doc. 24-6, pp. 76-77; doc. 24-8, pp. 56, 61. Despite the issue of fact whether the scaffold was "red-tagged," a resolution either way would at best prove a negligent act.

Plaintiff argues that Preload instructed and allowed workers to use the scaffold despite knowing it was defective and hazardous. Doc. 22-12, pp. 2–3. As support, Plaintiff offers the January 16, 2023 sworn statement of Chris Herrington, based on the OSHA report,[2] which provides expert testimony that Preload managers instructed employees to

---

[1] Plaintiff's Memorandum in Support, p. 13 n.56: "Jaime Pena deposition, Exhibit 6, p. 57, ln. 221-25, p. 58, ln. 1-8, p. 61, ln. 1-8 (testifying that he did not know that the scaffold had a red tag and did not recall seeing a red tag, further testifying that if the scaffold was red tagged it should not have been used); Raymond Harvey deposition, Exhibit 2, p. 49, ln. 2-15, p. 53, ln. 21-25, p. 54, ln. 1-12 (testifying that he did not recall seeing a red tag on the rolling scaffold); Jamal Harvey deposition, Exhibit 7, p. 36, ln. 3-9, p. 66, ln. 6-13."

[2] The OSHA Violation Worksheet for Citation Number 1, Item/Group 4 states that managers "Mr. Jeter [and] Mr. Neblett . . . assigned employees to perform work from the inherently unstable scaffold that was not wedged between shoring and the tank wall."

perform work despite the twelve percent slope and three uncovered holes on the floor. *Id.* at 2. This evidence, while likely sufficient for a claim of negligence, does not rise to the stringent level the Louisiana Supreme Court requires for the "intentional act" exception. *See Reeves*, 731 So. 2d at 211.

In its cross-motion for summary judgment, Preload argues that no one intended for this accident to happen. Doc. 24-1, p. 11. To support this claim, Preload has presented evidence that Project Manager David Jeter did not expect the scaffold to fall over the day of the accident. Doc. 24-4, pp. 270–71. Mr. Jeter testified that he "red-tagged" or "tagged-out" the scaffold because it did not have the required backup scaffold attached. Doc. 24-4, pp. 96, 234. Furthermore, Mr. Jeter testified that in fifty years with Preload, he never had a scaffold tip over or collapse. *Id.* at 277–78. This evidence does not suggest that Mr. Jeter was "substantially certain" or that he intended the scaffold to collapse the day of the accident.

Additionally, the dynamic working environment the day of the accident shows that this was more of an oversight than an intentional act by Preload. Specifically, Mr. Jeter testified that on the day of the accident, the Job Safety Analysis ("JSA") for the planned work that day did not involve working from heights. Doc. 24-4, p. 215. Mr. Jeter further testified that after the morning meeting, Preload received notification that the materials for "shotcreting," the planned job for the day, would be delayed. *Id.* at 216. In response to the delay and in an attempt to fill a void of three hours, Preload changed its work that day from the planned "shotcreting" to the task of painting the joints in the tank wall using the scaffold. *Id.* at 110, 222–23. When the decision to switch to painting using the scaffold was

made, the workers were redirected but Mr. Jeter did not re-enter the tank immediately to observe the scaffold. *Id.* at 222-23. Mr. Jeter stated that had he known the backup was not on the scaffold, he would have had it erected. *Id.* at 223. In short, Mr. Jeter did not intend for the scaffold to fall over the day of the incident. *Id.* at 218.

Without evidence proving the Project Manager, Mr. Jeter, knowingly directed unsafe work, Plaintiff has not met his burden to show that there is a genuine issue of material fact whether Preload knew with "substantial certainty" the scaffold would collapse causing Plaintiff's injury. *See Reeves*, 731 So. 2d at 211. Because Plaintiff has failed to established evidence that all of Preload actions go beyond negligence, his remedy is in workers' compensation under Louisiana Revised Statutes section 23:1032. The Court's ruling is in line with a sister court's ruling,[3] based on the same incident at issue here, that the scaffold accident was not the product of an intentional act. Doc. 38, p. 6.

## IV. <u>CONCLUSION</u>

For the aforesaid reasons Defendant's Cross-Motion for Summary Judgment (Doc. 24) will be **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment with Request for Oral Argument (Doc. 22) will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 24th day of April 2023.

```
          JAMES D. CAIN, JR.
       UNITED STATES DISTRICT JUDGE
```

---

[3] *Harvey v. Preload, LLC*, No. 2:21-CV-00401, 2023 WL 1460536, at *3 (W.D. La. Feb. 1, 2023).